IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| CAPITAL TEAS, INC. | * | Case No: 17-19426-RAG |
| | | (Chapter 11) |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(A) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING,
(B) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (C) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(D) GRANTING ADEQUATE PROTECTION, AND (E) SCHEDULING A FINAL HEARING

Capital Teas, Inc., the debtor and debtor in possession (the "Debtor"), by counsel, files this Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing, (B) Authorizing the Debtor's Use of Cash Collateral (C) Granting Liens and Providing Superpriority Administrative Expense Status, (d) Granting Adequate Protection, and (E) Scheduling a Final Hearing (the "Motion"). In support of this Motion, the Debtor relies on the Affidavit of Peter Martino in Support of the Motion (the "Martino Affidavit"), which is **Exhibit 1** hereto and is incorporated herein by reference. In further support of this Motion, the Debtor states as follows:

Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), and (M) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief are Sections 105, 361, 363, 364 and 552 of the Bankruptcy Code, and Rules 2002, 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Background

4. On July 11, 2017 (the "Petition Date"), the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is in possession of its property and will manage its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor is a Maryland corporation with its headquarters located in Annapolis, Maryland. The Debtor is a leading American tea retailer that offers one of the most complete specialty tea collections available anywhere with over 200 premium, organic, and natural teas and infusions, including its own proprietary blends. Martino Affidavit at ¶3.

6. Capital Teas Virginia, LLC ("CTV") is a wholly owned subsidiary of the Debtor. *Id.* at ¶4.

7. After closing five (5) retail stores in recent weeks as part of its restructuring, the Debtor operates thirteen (13) retail stores in five (5) states and CTV operates four (4) retail stores in Virginia. The Debtor maintains a strong retail web presence and offers a wholesale program whereby its teas are served at some of the finest dining and hospitality venues in the United States. *Id.* at ¶5.

8. The Debtor had approximately $7.3 million in sales in 2016. As of the Petition Date, the Debtor employed approximately one hundred twenty-nine (129) full and part time employees. *Id.* at ¶6.

9. The Debtor's assets include (i) accounts receivable, (ii) inventory for retail and wholesale sales and (iii) furniture, fixtures and equipment located at the retail locations, the Debtor's headquarters and warehouse. *Id.* at ¶7.

10. The chart below summarizes the Debtor's prepetition indebtedness to parties claiming liens on the Debtor's assets. To the best of the Debtor's knowledge, the creditors are listed below in the order of priority:

| Position | Secured Party | Original Principal Amount |
| --- | --- | --- |
| 1 | Willard Umphrey | $120,000.00 |
| 2 | USB Focus Fund XXIX, LLC (3/25/2014) | $1,250,000.00 |
| 3 | USB Focus Fund XXIX, LLC (6/4/2015) | $1,250,000.00 |
| 4 | USB Focus Fund Capital Teas 2, LLC | $3,893,259.00 |
| 5 | WebBank | $175,000.00 |
| 6 | Strategic Funding Source, Inc. | $400,000.00 |
| 7 | Edward Don & Co. | $10,850.00 |
| 8 | Crestview Financial LLC | $150,000.00 |
| 9 | ACE Funding Source, LLC | $75,000.00 |

| Position | Secured Party | Original Principal Amount |
|---|---|---|
| 10 | Willard Umphrey | $250,000.00 |
| 11 | Willard Umphrey | $750,000.00 |

*Id.* at ¶8.

11.  The Debtor asserts that the current value of its assets do not exceed the combined value of the debt held by Willard Umphrey and USB Focus Fund XXIX, LLC and the USB Focus Fund Capital Teas 2, LLC (collectively "Focus Funds") identified above.[1] Accordingly, the Debtor asserts that only the senior claims of Willard Umphrey and Focus Funds (collectively referred to as the "Secured Parties") are secured by among other things, the value of the Debtor's cash, including cash collateral, as defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral"). The remaining creditors that hold liens on the Debtor's property, but which are not secured by assets of value shall be referred to hereafter as the "Undersecured Creditors." *Id.* at ¶9.

12.  With the surge in tea sales in recent years, the Debtor grew almost 400% measured by the number of stores it operated from 2014 through 2016. However, several retail locations proved to be unprofitable and put a strain on the liquidity and profitability of the Debtor. To protect the inherent value in the business, the Debtor has been proactive in developing strategies to maintain its market position while reassessing its expansion efforts. Consistent with this strategy, the Debtor is seeking to reorganize its affairs through the bankruptcy process to maintain and increase its enterprise value. *Id.* at ¶10.

13.  A critical component of the Debtor's reorganization is the Court's approval of this Motion so that the Debtor has immediate access to incremental liquidity in the form of postpetition financing and use of Cash Collateral. The proposed financing is contemplated as a bridge loan until the Debtor obtains more DIP financing. The financing sought in this Motion is projected to finance the Debtor's prepetition payroll, utility deposits, legal retainer and operations through August, 2017. The postpetition financing sends a strong message to customers, vendors and employees that the Debtor's restructuring is funded and well-

---

[1] Mr. Umphrey is the principal and primary owner of Pear Tree Partners, LP, the Manager of the Focus Funds. Mr. Umphrey, the Focus Funds and other affiliates own a majority of the voting capital stock of the Debtor, and have board observer rights.

positioned to succeed. In addition, use of Cash Collateral will allow the Debtor to fund its ordinary and necessary day-to-day operations as well as its counsel's initial retainer. Without approval of this Motion, the Debtor will not have the cash required to continue daily operations or retain counsel, which will be to the detriment of the Debtor's customers, creditors, and estate. *Id.* at ¶11.

14. As discussed below and in the Martino Affidavit, the provisions of the postpetition financing and the Interim Order were negotiated as arm's length and in good faith, and the proposed financing provides the best terms presently available to the Debtor. The Debtor solicited proposals for debtor in possession financing from a variety of potential lenders and continues to do so, however the Debtor has not obtained other alternative financing as of the date of this filing. In the Debtor's business judgment, the proposed financing is reasonable, appropriate and provides the best comprehensive interim postpetition financing available under the circumstances. *Id.* at ¶12.

### Interim and 79 Day Budgets

15. During this case, the Debtor requires the use of its postpetition financing and Cash Collateral to fund day-to-day operations while it reorganizes, thus maintaining and enhancing the enterprise value of its assets.

16. The Debtor seeks the interim use of Cash Collateral, including cash on hand as well as proceeds from the operations of the Debtor's business during an initial seventeen (17) day period or the conclusion of the final hearing and entry of a final order approving the Motion (the "Interim Period"), unless sooner terminated under the terms of the proposed interim cash collateral order filed with the Motion or such other order to which the Debtor and the Secured Parties may agree (the "Interim Order"). During the Interim Period, the Debtor may use the Cash Collateral to pay the monthly operating expenses and professionals retained as set forth in the budget (the "Interim Budget"), which is **Exhibit 2** hereto and incorporated herein by reference and conditioned upon the terms and conditions of the Interim Order.

17. After the Interim Period, the Debtor seeks to use Cash Collateral for a period of seventy-nine (79) days subject to renewal pursuant to the monthly budgets which are

**Exhibit 3** hereto and incorporated herein by reference (the "Monthly Budgets"). The "Monthly Budgets" together with the Interim Budget will be collectively referred to herein as the "Budgets."

18. The Debtor's use of Cash Collateral will be governed by the Budgets and conditioned upon the terms and conditions of the Order and will be used to operate the Debtor's business in a manner that preserves and enhances the value of the Debtor's assets for the benefit of the Debtor's estate and creditors, including the Secured Parties.

19. The Debtor reviewed and analyzed its projected cash needs and prepared the Budgets outlining the Debtor's postpetition cash requirements for the Interim Period and first seventy-nine (79) days of the case. The Debtor believes that the Budgets provide an accurate reflection of its funding requirements over the identified periods, will allow it to meet its postpetition obligations, and are reasonable and appropriate under the circumstances. Martino Affidavit at ¶13.

20. As adequate protection for the Secured Parties, the Debtor (a) proposes to provide continued financial and other reporting to the Secured Parties substantially in accordance with its prepetition practices, (b) requests that the Court grant the Secured Parties replacement liens on the same assets on which it held prepetition liens and all products and proceeds thereof in the postpetition period, and (c) grant a superpriority administrative claim, but solely to the extent of any net diminution of the Secured Parties' interests in the prepetition collateral resulting from (i) the use of Cash Collateral, (ii) the use, sale or lease of any other prepetition collateral, or (iii) the imposition of the automatic stay. The Debtor submits that the foregoing adequately protects the Secured Parties for the use of Cash Collateral and is in the best interests of the estate.

21. As more fully set forth in the Martino Affidavit, the ability of the Debtor to finance its operations and the availability of sufficient working capital and liquidity is vital to the Debtor's ability to preserve its assets, maintain its operations, pay its employees, and secure counsel to represent it in this bankruptcy case. The Debtor requires access to cash to maintain, preserve and continue the Debtor's business operations. If the Debtor is unable to obtain

postpetition financing or use Cash Collateral for such purposes, the recoveries for all creditors, including the Secured Parties, will be greatly reduced because, under a "shut-down" scenario, the value of the Debtor's estate would decline dramatically. Martino Affidavit at ¶14. Entry of the Interim Order, and later, the 79-Day Order, is (a) critical to the Debtor's ability to maximize value for its creditors, (b) in the best interest of the Debtor and its estate, and (c) necessary to avoid immediate and irreparable harm to the Debtor, its owners, creditors, assets, business, goodwill and reputation. *Id*. at ¶15.

Summary of Relief Requested Pursuant to Bankruptcy Rule 4001(b)

**I.      Postpetition DIP Financing**

22.     Below is a summary of the material terms of the proposed postpetition financing ("DIP Financing"), together with references to the applicable sections in the relevant source document, as required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B). A copy of the Debtor in Possession Credit Agreement ("Credit Agreement") is attached as **Exhibit 4** hereto and incorporated herein by reference.

A.   Borrower: Capital Teas, Inc. (*See* Credit Agreement p.1 and Interim Order ¶3).

B.   Lender: Willard Umphrey ("Lender") (*See* Credit Agreement p.1 and Interim Order ¶3).

C.   Term: The earliest of: (i) December 31, 2018, (ii) the occurrence of a Final Sale, (iii) entry of an order confirming any plan of reorganization under Section 1129 of the Bankruptcy Code or an order authorizing the sale of all or substantially all of the Debtor's assets under Section 363 of the Bankruptcy Code; (iv) entry of an order appointing a Chapter 11 Trustee or an examiner under Sections 1104 or 1112 of the Bankruptcy Code, converting this case to one under Chapter 7, or dismissing this case; (v) the Debtor ceasing operations at more than 50% of its currently open stores; (vi) closing on Court-approved refinancing; or (vii) an Event of Default (the "Maturity Date"). (*See* Credit Agreement p.8 and Interim Order ¶3).

D.   Commitment: $175,000 (*See* Credit Agreement pp.1 and 4 and Interim Order ¶3).

E.   Interest Rate: 18% per annum (*See* Credit Agreement p.15 and Interim Order ¶3).

F.   Liens/Priority: In order to secure the DIP Financing, effective immediately upon entry of the Interim Order,

        Lender shall have a first priority priming lien on all assets of the Debtor with the consent of Willard Umphrey and the Focus Funds. The Lender shall also have an allowed superpriority administrative expense claim under Section 503(b) of the Bankruptcy Code. (*See* Credit Agreement p.34 and Interim Order ¶4).

    G.    <u>Borrowing Conditions</u>: The Debtor shall use the proceeds of the DIP Financing to the extent permitted under applicable law and solely in accordance with the Interim and Monthly Budgets. The Interim and Monthly Budgets are subject to review and approval of Lender, in its sole discretion. (*See* Credit Agreement pp.13 and 18 and Interim Order ¶5).

    H.    <u>Repayment</u>: The outstanding principal balance together with all accrued and unpaid interest, fees and any other charges hereunder shall be due in full on the Maturity Date. (*See* Credit Agreement p.14).

    I.    <u>Approval of Bankruptcy Court</u>: All terms, funding and commitments are subject to the approval by the Bankruptcy Court in form and substance satisfactory to the Lender, authorizing the transactions contemplated herein, the granting of an administrative expense and containing a good faith finding under Section 364(a) or (b) of the Bankruptcy Code, which order shall not be reversed, modified, amended, stayed or subject to motion for reargument or reconsideration. (*See* Credit Agreement p.17).

## II.    Cash Collateral

    23.    Pursuant to Rule 4001(b) of the Bankruptcy Rules, the proposed terms of the Debtor's use of Cash Collateral, and the relevant location within the Motion, and/or proposed Interim Order, are as follows:

    A.    <u>Name of Each Entity with Interest in Cash Collateral</u>. Willard Umphrey and the Focus Funds (*See* Motion at ¶11 and Interim Order at ¶D).

    B.    <u>Use of Cash Collateral</u>. The Debtor proposes to use Cash Collateral solely in accordance with the proposed Budgets. As condition of their consent to the use of Cash Collateral, the Budgets are subject to the approval of the Secured Parties, in their sole discretion   The Debtor will provide the Secured Parties with periodic reporting. The Budgets provide for payment of a retainer, postpetition operating expenses and expenses for administration of the cases, including costs and expenses necessary to preserve, maintain the prepetition collateral, other overhead and expenses with respect to the Debtor's day-to-day operations, professional fees and expenses, and fees of the United States Trustee pursuant to 28 U.S.C. § 1930. (*See* Motion at ¶¶16-18; Interim Order at ¶5 and Budgets).

   C. <u>Material Terms, Including Duration</u>.  The Debtor's use of Cash Collateral will be limited to the expenses of day-to-day operations to preserve or enhance the value of the collateral including continued operation of certain of its retail locations, website and wholesale operations in accordance with the line items set forth in the Budget.  The duration of the proposed Interim Order is for the later of seventeen (17) days from the Petition Date or the conclusion of the final hearing and entry of the Final Order approving the Motion (the "Interim Period").  (*See* Motion at ¶16; Interim Order at ¶5 and Budgets).

   D. <u>Adequate Protection</u>.  The Debtor proposes to provide the Secured Parties with adequate protection as follows:  (a) a replacement security interest in and lien on all of the Debtor's existing assets to the extent of any diminution of the Secured Party's collateral, junior only to the Lender's lien; (b) a superpriority administrative expense claim in the amount of the adequate protection obligations to the extent provided in Section 507(b) of the Bankruptcy Code; (c) during the Interim Period, the Debtor will limit its use of cash pursuant to the Budgets; and (d) financial reporting to the Secured Parties consistent with prepetition practices.  (*See* Motion at ¶20; Interim Order at ¶6).

Relief Requested

  24. By this Motion, the Debtor is seeking the Court's authority to obtain postpetition financing pursuant to Section 364(d) of the Bankruptcy Code and use Cash Collateral pursuant to Section 363(c)(2) of the Bankruptcy Court.

  25. With limited cash on hand, the Debtor requires the interim approval of the DIP Financing.  Absent the immediate relief requested in this Motion, the Debtor faces a material risk of substantial, irreparable and ongoing harm.  Access to Cash Collateral and the DIP Financing will ensure the Debtor has sufficient funds available to preserve and maximize the value of its estate.

Basis for Relief

**I. The Debtor Should be Authorized to Obtain Postpetition Financing**

  26. Section 364(d)(1) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A) the trustee is unable to obtain such credit otherwise; and

  (B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

  **A.**  **DIP Financing is an Exercise of the Debtor's Sound Business Judgment**

  27.  Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below. Courts grant a debtor in possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See*, *e.g.*, *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) ("Business judgments should be left to the board room and not to this Court"); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

  28.  Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003) (citation omitted) (emphasis in original, text modifications removed); *see also In re Abitibi Bowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").

  29.  Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006).

Accordingly, management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. at 881 (Bankr. W.D. Mo. 2003)(citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003).

30.     In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. at 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.*), 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). The Court may also appropriately take into consideration non-economic benefits to the Debtors offered by a proposed postpetition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.* This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009).

31.     The Debtor's determination to move forward with the DIP Financing is an exercise of its sound business judgment following an arm's-length process and careful evaluation of alternatives. Specifically, the Debtor determined that postpetition financing will create certainty with respect to cash flows necessary for the administration of this Chapter 11 case. The

Debtor negotiated the terms with the Lender in good faith, at arm's length, and with the assistance of their respective counsel, and the Debtor believes that it has obtained the best financing available. Accordingly, the Court should authorize the Debtor's entry into the DIP Financing as a reasonable exercise of the Debtor's business judgment.

### B. Authorization to Grant Liens and Superpriority Claims is Warranted under the Circumstances

32. The Debtor proposes to obtain financing under the DIP Financing by providing the Lender with a first priority priming lien pursuant to Section 364(d)(1) of the Bankruptcy Code. Section 364(d) provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate subject to a lien, after notice and a hearing, where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

33. In order to obtain financing under Section 364(d)(1), the debtor must demonstrate that it is unable to obtain such credit otherwise. As described in the Martino Affidavit, due to the Debtor's high level of existing secured debt obligation, third-party lenders were unwilling to provide postpetition financing on an unsecured basis. The Debtor concluded that any workable financing likely would require the support of, or be provided by, an existing lender, such as Willard Umphrey. Absent the DIP Financing, which will provide certainty that the Debtor will have sufficient liquidity to administer its Chapter 11 case, the value of the Debtor's estate would be significantly impaired to the determent of all creditors. Given the Debtor's circumstances, the Debtor believes that the terms of the DIP Financing are fair, reasonable and adequate. Martino Affidavit at ¶16.

34. Willard Umphrey and the Focus Funds, the holders of the four highest priority positions in the Debtor's assets, consent to this lien. Consent by the secured creditor to priming obviates the need to show adequate protection. *See Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieve the debtor of having to demonstrate that they were adequately protected."). Accordingly, the Debtor may incur a "priming" lien under the DIP

Financing because all prepetition lenders whose claims are not undersecured have consented and the relief requested pursuant to Section 364(d)(1) of the Bankruptcy Code is appropriate.

### C. No Comparable Alternative to the DIP Financing is Available

35. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by section 364(d) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

36. As noted above, the Debtor does not believe that alternative sources of financing are yet reasonably available. Thus, the Debtor has determined that the DIP Financing provides the best opportunity available to the Debtor under the circumstances at this time to fund this Chapter 11 case. *See* Martino Affidavit at ¶17. Therefore, in addition to evidence to be introduced at the hearing on the Interim Order if necessary, the Debtor submits that the requirement of Section 364 of the Bankruptcy Code that alternative credit on more favorable terms be unavailable to the Debtor is satisfied.

## II. The Debtor's Use of Cash Collateral is Necessary

37. The standards governing a debtor's use of cash collateral are set forth in Section 363(c)(2) of the Bankruptcy Code, which provides:

> The trustee [or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph 1 of this subsection, unless -
>
> (A)     each entity that has an interest in such cash collateral consents; or
>
> (B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

38.     The "provisions of this section" referenced in Section 363(c)(2) include Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).  The Debtor respectfully submits that the proposed use of Cash Collateral is necessary to preserve its assets during the case and will avoid immediate and irreparable harm to the Debtor's estate and creditors, including the Lender and the Secured Parties.  Specifically, the Debtor requires the use of the Cash Collateral to operate its business and to pay the Debtor's necessary expenses and its counsel's required retainer while it reorganizes under the supervision of this Court.

39.     As set forth below, the Secured Parties' alleged interests are adequately protected through, among other things: (a) budgetary constraints which allow spending on day-to-day operations which preserve or enhance the value of the collateral, (b) financial reporting as requested by the Secured Parties , (c) a replacement lien on the Debtor's postpetition assets on which it held prepetition liens and all products and proceeds thereof in the Interim Period, and (d) a superpriority administrative expense claim to the extent the Debtor's use of cash collateral results in a diminution of the value of the Secured Parties' collateral.  Accordingly, the use of Cash Collateral directly benefits the estate and creditors by enhancing the prospects of a successful outcome of this case.

### A. The Budgetary Constraints on the Debtor's Use of Cash Collateral Adequately Protect the Interests of the Secured Parties

40. The Budgets provides for expenditures to fund the Debtor's necessary and essential day-to-day operations, which for the foreseeable future are primarily the continued costs of operations of its retail locations.

41. Courts have routinely held that adequate protection may be demonstrated by a showing that the going concern value of a debtor, or the value of the lender's collateral, is preserved by the debtor's continuing operations and use of cash collateral. See, e.g., *In re JKL Chevrolet, Inc.*, 117 F.3d 1413, 1413 (4th Cir. 1997) (allowing use of cash collateral to operate automobile dealership as long as continued operations maintained the value of the business); *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1087 (4th Cir. 1986) (allowing use of cash collateral to operate ski resorts where trustee reported that ski resort would lose 50% to 90% of its fair market value if it ceased operating).

42. In this bankruptcy case, the cash expenditures are necessary to preserve and maintain the value of the prepetition collateral and the interests of the Secured Parties and to make certain that the Debtor has competent counsel to guide it through this bankruptcy case. If the Debtor is precluded from making expenditures necessary to maintain its assets and conduct continuing commercial operations and ongoing sales operations in the ordinary course, or if the Debtor is forced to abruptly shut down its operations, the Secured Parties and all creditors will be harmed. See, e.g., *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bank. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.").

### B. The Secured Parties Will Receive Replacement Liens and Superpriority Claims

43. Section 361(2) of the Bankruptcy Code provides that adequate protection may be provided by granting a replacement lien in postpetition assets to protect the secured creditor from diminution of its collateral during the bankruptcy case. Courts have utilized that provision of Section 361 in fashioning adequate protection and permitting a debtor to use cash collateral under similar circumstances. *See, e.g., In re LTV Steel Company, Inc.*, 274 B.R. 278, 286 (Bankr. N.D. Ohio 2001); *In re Prichard Plaza Associates Limited Partnership*, 84 B.R.

289, 302 (Bankr. D. Mass. 1988) ("If the proceeds stream is likely to remain stable through the collection of new accounts receivable or the sale of new inventory, adequate protection is often ensured by a replacement lien on postpetition accounts and inventory and their proceeds and by some provision for monitoring the use of proceeds."); *In re Airport Inn Associates, Ltd.*, 132 B.R. 951, 960 (Bankr. D. Col. 1990) ("The court could order a lien in postpetition accounts receivable as adequate protection if that relief was requested . . . ."); *In re International Design & Display Group, Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (court authorized debtor to use cash collateral and, as adequate protection, granted secured creditor replacement lien on all postpetition accounts receivable, inventory and contracts to the extent the creditor's collateral was depleted).

44. The proposed Interim Order provides adequate protection to the Secured Parties in the form of (a) replacement liens on and security interests in the Debtor's assets on which the Secured Parties have prepetition liens (whether existing on the Petition Date or acquired or arising thereafter), and proceeds thereof (*See* 11 U.S.C. § 361(2) (providing replacement liens as a form of adequate protection)); and (b) allowed superpriority claims pursuant to Section 507(b) of the Bankruptcy Code, senior to all other administrative claims, except as set forth below. Such adequate protection is commonplace. *See, e.g., MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing the debtor to replace a lien on cash with a lien on property); *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor). The replacement liens and superpriority claims are granted solely to the extent of any net diminution of the value of the Secured Parties' interests in the Cash Collateral resulting from the (a) Debtor's use of the Cash Collateral; (b) the Debtor's use, sale or lease of any other prepetition collateral; or (c) the imposition of the automatic stay. The adequate protection liens and superpriority claims shall also be junior and subject to all valid, enforceable, perfected and unavoidable liens on the prepetition collateral in existence as of the Petition Date or duly perfected after the Petition Date under Section 546(b) of the Bankruptcy Code.

      **C.    The Interim Orders Require the Debtor to Provide Financial Reporting to the Secured Parties Substantially in Accordance with their Prepetition Practices**

      45.    Continued financial and other reporting as required by the proposed Interim Order is often a component of the adequate protection provided to secured creditors. *See, e.g., In re 5877 Poplar, L.P.*, 268 B.R. 140, 150 (Bankr. W.D. Tenn. 2001) (finding adequate protection for use of cash collateral where, among other things, the Debtor agreed to provide operating reports to the lender and permit inspection of the premises upon lender's reasonable request). In addition to the Budgets, that may be updated from time to time, the Secured Parties will continue to receive from the Debtor periodic cash flow reports, showing cash receipts and disbursements made by the Debtor during the prior week. Upon reasonable notice by the Secured Parties, the Debtor will also permit the Secured Parties and any of their financial advisors reasonable access to the Debtor's management and financial advisors to discuss and to review the Debtor's cash flows, operating and financial performance, budgets, forecasts, projections and documents related thereto, including, without limitation, to review matters related to the existence, condition, location and amount of the Secured Parties' collateral.

The Need for Prompt Relief Pending a Final Hearing.

      46.    Bankruptcy Rules 4001(b) and 4001(c) provides that a final hearing on a motion to obtain credit pursuant to Section 364 of the Bankruptcy Code or to use cash collateral pursuant to Section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a Debtor's estate pending a final hearing.

      47.    Pursuant to Bankruptcy Rules 4001(b) and 4001(c), the Debtor requests that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtor to obtain postpetition financing and use of Cash Collateral on an interim basis in accordance with the Interim Budget, pending entry of a final order, in order to (i) maintain and finance the ongoing operations of the Debtor and (ii) avoid immediate and irreparable harm and prejudice to

the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

48. Unless the Debtor is authorized to obtain postpetition financing and use of the Cash Collateral, the Debtor will be unable to continue to operate its business, including meeting its essential operating expenses. In that event, the Debtor would be deprived of any ability to have a successful reorganization.

49. Accordingly, the Debtor respectfully submits that entry of an Order authorizing the interim authority to obtain postpetition financing and use of Cash Collateral until entry of a final Order approving the Motion, and scheduling a final hearing to approve Motion is necessary and appropriate, and in the best interest of creditors and the estate.

50. Willard Umphrey and the Focus Funds consent to the relief requested in this Motion and have approved the form of Interim Order attached hereto.

### Notice

51. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) the Lender and its counsel, (iv) the Secured Parties; (v) the Undersecured Creditors; and (vi) all parties that have required service of pleadings pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no further notice is required.

### Waiver of Memorandum of Law

52. Pursuant to Local Rule 9013-2 of the Local Rules, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

### No Prior Request

53. No prior request for the relief sought in this Motion has been made to this or any other Court.

### Conclusion

WHEREFORE, the Debtor respectfully requests that the Court (A) enter the Interim Order granting the relief requested herein, (i) authorizing the Debtor to obtain

postpetition financing, (ii) authorizing the Debtor's use of Cash Collateral (iii) granting liens and providing superpriority administrative expense status, (d) granting adequate protection; (B) schedule an interim hearing and a final hearing; and (C) grant the Debtor such other and further relief as the Court deems just and proper.

        /s/ Lawrence J. Yumkas
Lawrence J. Yumkas, 06357
Lisa Yonka Stevens, 27728
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044
(443) 569-0758
lyumkas@yvslaw.com/lstevens@yvslaw.com

Counsel for Debtor

SEEN AND CONSENTED TO:

       /s/ Kenneth S. Leonetti
Kenneth S. Leonetti
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2600
(617) 832-1271
kleonetti@foleyhoag.com

Counsel for Willard Umphrey,
USB Focus Fund XXIX, LLC, and
USB Focus Fund Capital Teas 2, LLC

## CERTIFICATE OF SERVICE

    I hereby certify that on the 11th day of July 2017, notice of filing the Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing, (B) Authorizing the Debtor's Use of Cash Collateral (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection, and (E) Scheduling a Final Hearing was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notice.

                     /s/ Lawrence J. Yumkas
                      Lawrence J. Yumkas

The following parties received
CM/ECF notice of the filing:

Lawrence J. Yumkas, Esquire
(lyumkas@yvslaw.com)
Counsel for Debtor
Yumkas, Vidmar, Sweeney & Mulrenin
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044

US Trustee – Baltimore
(ustpregion04.ba.ecf@usdoj.gov)
101 West Lombard Street, Suite 2625
Baltimore, Maryland  21201