Entered: September 7th, 2017
Signed: September 6th, 2017

**SO ORDERED**

The hearing shall be held on December 18, 2017 at 11:00 a.m.




ROBERT A. GORDON
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| CAPITAL TEAS, INC. | * | Case No: 17-19426-RAG (Chapter 11) |
| Debtor | * | |

* * * * * * * * * * * *

ORDER (A) AUTHORIZING ADDITIONAL POSTPETITION FINANCING, (B) AUTHORIZING CONTINUED USE OF CASH COLLATERAL THROUGH DECEMBER 31, 2017, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (D) GRANTING ADEQUATE PROTECTION

Upon consideration of the Motion for Entry of an Order (A) Authorizing Additional Postpetition Financing, (B) Authorizing Continued Use of Cash Collateral through December 31, 2017, (C) Granting Liens and Providing Superpriority Administrative Expense Status, and (D) Granting Adequate Protection (the "Motion")[1]; this Court finds that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (D) and (M); and (iii) notice of the Motion was sufficient in under the circumstances and that no other or further notice is required; the Court having determined, without prejudice, that the relief sought in the Motion is in the best interests of Debtor and its creditors, estate and other parties-in-interest; all objections to the entry of this Order having been withdrawn or overruled, after due deliberation and sufficient cause appearing therefore, this Court makes the following findings and enters this Order, all as set forth below:

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

Findings

A. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on July 11, 2017 (the "Petition Date"), and is presently operating as a debtor in possession pursuant to 11 U.S.C. §§1107 and 1108.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M).

C. On July 24, 2017, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

D. Notice of the Motion and hearing have been served in accordance with Section 102(1) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001(b) and 4001(c), which notice is appropriate in the particular circumstances and sufficient for all purposes under the Bankruptcy Code and the applicable Federal and Local Rules of Bankruptcy Procedure with respect to the relief requested.

E. It appears that the current value of the Debtor's assets do not exceed the value of the debts held by Willard Umphrey, USB Focus Fund XXIX, LLC, and USB Focus Fund Capital Teas 2, LLC (collectively, the "Secured Parties"). Nevertheless, and for purposes of the Motion and this Order, Strategic Funding Source, Inc., WebBank, Edward Don & Co., Crestview Financial, LLC, Regal Dynamic Contracting, LLC ("Regal"), LD Simpson Construction, LLC ("LDSC"), and Ace Funding Source, LLC will also be deemed a Secured Party and entitled to the adequate protection provided herein, provided that the Secured Parties shall not seek a remedy relating to the protected interest until and unless it establishes that it holds claims as of the Petition Date that were secured by value in the Debtor's collateral; provided further, however, that for the avoidance of any doubt, nothing contained herein shall prejudice any Secured Party's right to seek relief from the automatic stay.

F. The Secured Parties assert that their interests are secured by liens on substantially all of the Debtor's assets, including cash collateral, as defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral"), except for Regal and LDSC which assert that their

mechanics lien claims are secured only by the Debtor's leasehold interests in real properties located in Pennsylvania, Colorado and Florida that may also include Cash Collateral.

G. "Cash Collateral" as defined by 11 U.S.C. §363(a) includes postpetition proceeds subject to a security interest as provided in Section 552(b) of the Bankruptcy Code.

H. The Lender has previously extended debtor-in-possession financing to the Debtor in the amount of $175,000, which financing was approved by this Court pursuant to 11 U.S.C. § 364, and granted first priority priming security interests in all collateral of the Debtor and superpriority administrative status (the "Original DIP Financing"). The Debtor seeks (a) authority to enter into the Additional DIP Financing on the terms described herein and in the promissory note and (b) continued use of Cash Collateral on the terms described herein to administer its case and fund its operations.

I. The ability of the Debtor to finance its operations and the availability of sufficient working capital and liquidity are vital to the Debtor's ability to preserve its assets, maintain its operations, pay certain administrative expenses of the estate, and secure professionals in this bankruptcy case. The Debtor has an immediate and critical need to use Cash Collateral and to obtain credit in order to, among other things, enable the orderly continuation of its operations and to administer and preserve the value of its estate. The ability of the Debtor to maintain business relationships with its vendors, suppliers and customers, to pay their employees and otherwise finance its operations requires the availability of working capital from the Additional DIP Financing and the continued use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, and parties-in-interest.

J. If the Debtor is unable to use its cash, including Cash Collateral for such purposes, the recoveries for all creditors, including the Secured Parties, will be greatly reduced, since under a "shut-down" scenario the value of the Debtor's estate would decline dramatically. Authorization to obtain postpetition financing and used Cash Collateral is (i) critical to the Debtor's ability to maximize value for its creditors, (ii) in the best interests of the Debtor and its

estate, and (iii) necessary to avoid immediate and irreparable harm to the Debtor, its creditors, assets, businesses, goodwill and reputation.

K. The Debtor does not have sufficient available sources of working capital and unencumbered cash with which to continue to operate its business in Chapter 11. The Debtor requires immediate authority to obtain additional postpetition financing and continued use of Cash Collateral to operate its business without interruption and to pay professionals in this Chapter 11 case. The Debtor's ability to obtain additional postpetition financing and continued use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate.

L. The Additional DIP Financing is the best source of debtor in possession financing available to the Debtor under the current circumstances. The Debtor solicited proposals for debtor in possession financing from a variety of potential lenders and continues to do so, however the Debtor has not yet obtained any other alternative financing to date. Accordingly, the Debtor has been unable to obtain financing from sources other than the Lender on terms more favorable than the Additional DIP Financing. Financing on a postpetition basis is not otherwise available without granting the Lender a perfected security interests in and lien on all of the Debtor's existing and after-acquired assets and a superpriority claim and other protections set forth in this Order.

M. As a condition to entry into the Additional DIP Financing, the extension of credit and the authorization to use Cash Collateral, the Lender requires that the proceeds shall be used consistent with the terms and conditions of this Order and in accordance with the Budgets.

N. The terms and conditions of the Additional DIP Financing are fair, reasonable, and the best available to the Debtor under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtor's exercise of prudent business judgment and are supported by reasonably equivalent value and consideration. The terms and conditions of the Additional DIP Financing and the continued use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor, Lender and Secured Parties. Use of Cash Collateral and credit to be extended under the Additional DIP

Financing shall be deemed to have been allowed, advanced, made, or extended in good faith by the Lender within the meaning of Section 364(e) of the Bankruptcy Code.

O. The Debtor must be authorized to obtain additional postpetition financing and continued use of the Secured Parties' Cash Collateral to meet its ordinary course of business cash needs for the payment of its retainer and fees for professionals and actual postpetition expenses including, but not limited to, ordinary and necessary overhead expenses, taxes, insurance, utilities, Stub Rent, and other routine and necessary vendors and other expenses as reflected in the Budgets through December 31, 2017. The Court has determined that the Debtor has shown good cause for granting the relief requested in the Motion.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. The Motion is hereby GRANTED.

2. The Additional DIP Financing is hereby approved. The Debtor is expressly and immediately authorized to incur and to perform the Additional DIP Financing obligations in accordance with, and subject to, the terms of this Order, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtor under the Additional DIP Financing and the creation and perfection of the liens described in and provided for by this Order. The Debtor is hereby authorized and directed to pay, in accordance with this Order, the principal, interest, and other amounts comprising the Additional DIP Financing as such become due and without need to obtain further Court approval.

3. In order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request from Lender (in addition to the $175,000 previously approved and advanced by Lender) up to an aggregate outstanding principal amount of not greater than $300,000.00 to be repaid at an 18% per annum interest rate with a maturity of the earliest of (i) December 31, 2018, (ii) the occurrence of a Final Sale, (iii) entry of an order confirming any plan of reorganization under Section 1129 of the Bankruptcy Code or an order authorizing the sale of all or substantially all of the Debtor's assets under Section 363 of the

Bankruptcy Code; (iv) entry of an order appointing a Chapter 11 Trustee or an examiner under Sections 1104 or 1112 of the Bankruptcy Code, converting this case to one under Chapter 7, or dismissing this case; (v) the Debtor ceasing operations at more than 50% of its currently open stores; (vi) closing on Court-approved refinancing; or (vii) an Event of Default under the Credit Agreement.

4. In order to secure the Additional DIP Financing, effective immediately upon entry of this Order, pursuant to Section 364(d) of the Bankruptcy Code, the Lender is hereby granted, nunc pro tunc to the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens, senior in priority to any other security interest (other than the Original DIP Financing, to which the Additional DIP Financing is *pari passu*), on all assets, whether now existing or hereafter arising, to the extent of the Additional DIP Financing, to secure the Debtor's obligations under the Additional DIP Financing, subject to paragraph 5 below. The Lender shall also have a superpriority administrative expense claim under Section 503(b) of the Bankruptcy Code to the extent of the Additional DIP Financing, senior to any and all other allowed administrative expense claims other than a claim made on account of the Original DIP Financing, to which it shall be *pari passu* . The Lender is hereby authorized and allowed to file any financing statements it deems necessary to perfect its liens and security interests, provided, however, that the liens and security interests granted herein are automatically deemed perfected upon entry of this Order without the necessity of the Lender taking possession of its collateral or filing financing statements or other documents.

5. Pursuant to the Credit Agreement, if and to the extent the Lender seeks to charge the Debtor for reasonable legal fees and expenses incurred by Lender's counsel (as referenced in the Credit Agreement), the Lender shall file an appropriate application or motion to obtain an order authorizing payment of such fees and/or expenses.

6. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Lender, upon an Event of Default, to exercise any enforcement rights or remedies permitted under the Credit Agreement or this Order; provided, however, that the Lender shall provide ten (10) business days written notice

(by facsimile, telecopy, electronic mail or otherwise) of the Event of Default to the Committee, the Office of the U.S. Trustee and counsel to the Debtor prior to exercising any such enforcement rights or remedies (and during such ten (10) period the Debtor may cure or otherwise resolve such default(s)). Nothing in the foregoing shall be deemed to limit the right of Lender, upon an Event of Default, to request (upon notice to counsel for the Debtor and counsel to the Committee) emergency relief from the Court before the expiration of such period to permit it to take action to protect or preserve its collateral or any other appropriate relief.

7. Notwithstanding anything to the contrary contained herein, with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Order, except as permitted by the applicable lease or pursuant to applicable law, but rather liens shall be granted on the economic value of, proceeds of sale or other disposition of, and any other proceeds or products of such leasehold interests, including any proceeds realized on the assumption and/or assignment of such leases.

8. Notwithstanding anything to the contrary contained herein, the collateral of the Lender and Secured Parties shall exclude avoidance actions (and proceeds thereof) under Chapter 5 of the Bankruptcy Code other than actions under Section 549 thereof.

9. The amount of the Secured Parties' Cash Collateral authorized to be used by the Debtor is not to exceed the gross amounts reflected in the Debtor's Budgets, attached as **Exhibit 1** hereto and incorporated herein by reference, though the Debtor may exceed any single line item in the Budgets by an amount not exceeding ten percent (10%) so long as there are corresponding reductions in other line items. The Debtor is authorized to use the Secured Parties' Cash Collateral through and including December 31, 2017 in accordance with the Budgets for the following purposes:

(a) maintenance and preservation of its assets;

(b) the continued operation of its business by payment of its actual expenses including but not limited to: ordinary and necessary overhead expenses, taxes, insurance, utilities, Stub Rent, and other routine and necessary vendors and other expenses as reflected in the Budgets;

(c) approved prepetition payroll; and

(d) retainers and fees for bankruptcy professionals.

10. The indemnification provisions set forth in section 9.04(b) of the Credit Agreement are approved, and the Debtor is authorized to indemnify the Indemnitees (as that term is defined in section 9.04(b) of the Credit Agreement) in accordance with section 9.04(b) of the Credit Agreement subject to the following conditions:

(a) Notwithstanding any provision of the Credit Agreement to the contrary, the Debtor shall have no obligation to indemnify the Indemnitees, or provide contribution or reimbursement, for any claim or expense that is either (1) judicially determined (the determination having become final) to have arisen from the Indemnitee's gross negligence, willful misconduct, bad faith, self-dealing or breach of fiduciary duty, if any, or (2) settled prior to a judicial determination as to the Indemnitee's gross negligence, willful misconduct, bad faith, self-dealing or breach of fiduciary duty, if any, but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnitee should not have received indemnity, contribution or reimbursement under the terms of the Credit Agreement; and

(b) In the event an Indemnitee seeks to be indemnified, or receive contribution or reimbursement, including reimbursement for attorneys' fees, from the Debtor pursuant to the Credit Agreement, the Indemnitee must file an application therefor in this Court, and the Debtor may not pay any amounts to the Indemnitee or such other indemnified parties before entry of an order by this Court approving such payments.

11. As adequate protection for the use of Cash Collateral, the Secured Parties are GRANTED:

(a) A replacement lien under 11 U.S.C. § 361(2), junior only to the liens of Lender with respect to the Original DIP Financing and Additional DIP Financing: (i) to the extent the Secured Parties' Cash Collateral is used by the Debtor and such use results in a diminution of the value of their Cash Collateral; (ii) to the extent such prepetition liens are valid and enforceable; and (iii) a superpriority claim pursuant to 11 U.S.C. § 507(b) limited to the extent of the diminution of the Secured Parties' interest in Cash Collateral such that the Secured

Party is placed in an undersecured position (but only to the extent that the prepetition liens and security interests are valid and enforceable).

(b) The replacement lien and security interest granted herein is automatically deemed perfected upon entry of this Order without the necessity of the Secured Parties taking possession of their collateral or filing financing statements or other documents.

(c) Nothing herein shall constitute a finding that the Secured Parties have valid liens on the Cash Collateral or any of the other assets of the Debtor. The Debtor, for the Debtor's estate and the Committee and any later appointed trustee, reserves all rights and defenses concerning the validity, extent, and priority of any of the alleged liens of the Secured Parties and the validity of any loan documents, however, neither the Additional DIP Financing for the Cash Collateral may be used to investigate, prosecute, litigate or challenges the extent, priority or validity of the Secured Parties asserted liens or security interests. In the event the Secured Parties' alleged liens on Cash Collateral are determined to be invalid, then the adequate protection provided hereunder to the Secured Parties shall be null and void.

(d) During the term of this Order, the Debtor shall provide the Lender, the Secured Parties and the Committee with periodic cash flow reports, showing cash receipts and disbursements made by the Debtor during the prior week. In addition, during the term of this Order, upon reasonable notice by the Lender or the Secured Parties, the Debtor shall permit the Lender or Secured Parties and any of their advisors reasonable access to the Debtor's management and financial advisors to discuss and to review the Debtor's cash flows, operating and financial performance, the Debtor's budgets, forecasts, projections and documents related thereto, including, without limitation, to review matters related to the existence, condition, location and amount of the Secured Parties' collateral. After an Event of Default, the rights of the Lender or the Secured Parties to enter onto the Debtor's leased premises shall be limited to (a) any such rights agreed in writing by the applicable landlord pursuant to any separate agreement by and between such landlord and the Lender or the Secured Parties, (b) the rights the Lender or the Secured Parties has under applicable non-bankruptcy law, if any, and (c) such

rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

12. Nothing contained herein shall be deemed or construed to: (a) limit the Debtor, Lender or the Secured Parties to the relief granted herein; (b) bar the Debtor, Lender or the Secured Parties from seeking other and further relief (including without limitation relief from the terms of this Order) for cause shown on appropriate notice from the Debtor and other parties-in-interest entitled to notice of same; or (c) require the Lender or Secured Parties to make any loans or advances to the Debtor, not otherwise set forth herein. The Order may be modified for cause shown by the Debtor, Lender or the Secured Parties or any other party-in-interest on due notice.

13. The term of this Order shall terminate at 11:59 p.m. on December 31, 2017.

14. This Order constitutes the Court's findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedures 7052 and shall take effect immediately and be fully enforceable upon entry. There shall be no stay of execution or effectiveness of this Order notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other applicable rule.

15. In the event that there is a direct conflict between the terms of this Order and the terms of the Credit Agreement, the terms of this Order shall control.

16. A further hearing on the Debtor's continued use of Cash Collateral will be held on **the date and time set forth at the top of this Order,** in Courtroom 1-B of the United States Bankruptcy Court, 101 West Lombard Street, Baltimore, Maryland. Any creditor or other interested party having any objection to the Debtor's use of Cash Collateral shall file a written objection with the Clerk of this Court and serve a copy upon counsel for the Debtor, Lender, the Secured Parties and their counsel, if known, the Committee, and the Office of the United States Trustee by or before **the date and time set forth at the top of this Order**.

17. The Debtor shall serve a copy of this Order within three (3) business days from the date hereof, on the following parties, or their counsel if known: (i) the Office of the

United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) the Lender and its counsel, (iv) the Secured Parties; and (v) all parties that have requested service of pleadings pursuant to Bankruptcy Rule 2002. The Debtor shall thereafter file with the Clerk a Certificate of Service of said mailing.

cc: Lawrence J. Yumkas, Esquire
Lisa Yonka Stevens, Esquire
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044

Attached Service List

**END OF ORDER**

ACE Funding Source, LLC
366 North Broadway, Suite 410
Jericho, NY 11753

Corporation Service Company, as rep.
P. O. Box 2576
Springfield, IL 62708

Crestview Financial LLC
1430 Broadway, Suite 402
New York, NY 10018-3308

Edward Don & Company
2562 Paysphere Circle
Chicago, IL 60674

Express Capital Funding
130 South Chaparral Court, Suite 245
Anaheim, CA 92808

Tax Guard, Inc.
1750 14th Street, Suite 201
Boulder, CO 80302

WebBank
215 South State Street, Suite 1000
Salt Lake City, UT 84111

Kenneth S. Leonetti, Esquire
Robert G. Sawyer, Esquire
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

Andrew S. Conway, Esquire
The Taubman Company
200 East Long Lake Road, Suite 300
Bloomfield Hills, Michigan 48303

Ronald M. Tucker, Esquire
Counsel for Simon Property Group, Inc.
and its related entities
225 West Washington Street
Indianapolis, Indiana 46204

The following parties received
CM/ECF notice of the filing:

Geri Lyons Chase, Esquire
(gchase@glchaselaw.com)
Counsel for Amerishop Suburban, L.P.
2007 Tidewater Colony Drive, Suite 2B
Annapolis, Maryland 21401

Justin P. Fasano, Esquire
(jfasano@mhlawyers.com)
Counsel for Cristina Fernandez, Nicole Elhaj
and Christina Cytryn
McNamee, Hosea
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770

Jonathan L. Gold, Esquire
(jonathan.gold@leclairryan.com)
Counsel for the Committee
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314

Richard Edwin Lear, Esquire
(richard.lear@hklaw.com)
Counsel for Regal Dynamic Contracting
Holland and Knight LLP
800 17th Street NW, Suite 1100
Washington, D.C. 20006-6801

Katherine A. Levin, Esquire
(katherine.a.levin@usdoj.gov)
United States Department of Justice
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201

Adam M. Lynn, Esquire
(alynn@mdswlaw.com)
Counsel for ShoreGate of Margaret
Avenue, LLC
McAllister, DeTar, Showalter &Walker
100 North West Street
Easton, Maryland 21601

Tracey M. Ohm, Esquire
(tracey.ohm@stinson.com)
Counsel for Staples and Charles
Stinson Leonard Street LLP
1775 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006

Andrew Blake Schulwolf, Esquire
(andrew@albertandschulwolf.com)
Counsel for NH-D Retail Investment, LLC
Albert & Schulwolf, LLC
110 North Washington Street, Suite 300
Rockville, Maryland 20850

Lisa Yonka Stevens, Esquire
(lstevens@yvslaw.com)
Counsel for Debtor
Yumkas, Vidmar, Sweeney & Mulrenin
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044

Matthew G. Summers, Esquire
(summersm@ballardspahr.com)
Counsel for GGPLP, Federal Realty Inv. Trust,
Taubman Company, Annapolis Mall Owner
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202

Mark D. Taylor, Esquire
(mtaylor@vlplawgroup.com)
Counsel for Strategic Funding Source Inc.
VLP Law Group
1629 K Street, NW, Suite 300
Washington, DC 20006

US Trustee – Baltimore
(ustpregion04.ba.ecf@usdoj.gov)
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201

James E. Van Horn, Esquire
(jvanhorn@mcguirewoods.com)
Counsel for Umphrey, USB Focus Fund XXIX,
LLC and USB Focus Fund Capital Teas 2, LLC
McGuireWoods, LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202-1671

Lawrence J. Yumkas, Esquire
(lyumkas@yvslaw.com)
Counsel for Debtor
Yumkas, Vidmar, Sweeney & Mulrenin
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044

# EXHIBIT 1

**CAPITAL TEAS MID-TERM SUMMARY CASH BUDGET**

**8/28-9/3**

| Item | Amount |
|---|---|
| Cash on hand 8/28 | 5 |
| Expected deposits | |
| Week of 8/29 Sales | 90 |
| **New DIP LOAN - Tranche #1** | **160** |
| Cash in | 255 |
| Outflows | |
| (Non-payroll week) | |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Bankruptcy Legal Fees | 20 |
| *Custom Order Teaware* | *26* |
| *Custom Order Tea Tins* | *15* |
| September rent | 94 |
| Utility Deposit Account | 15 |
| Retainer, Creditor's Counsel | 10 |
| eCommerce development | 10 |
| Total Outflows | 210 |
| **Cash 9/4** | **45** |

**9/4-9/10**

| Item | Amount |
|---|---|
| Cash on hand 9/4 | 45 |
| Expected deposits | |
| Week of 9/4 Sales | 95 |
| Cash in | 140 |
| Outflows | |
| Payroll 9/8 | 100 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Total Outflows | 120 |
| **Cash 9/10** | **20** |

**9/11-9/17**

| Item | Amount |
|---|---|
| Cash on hand 9/11 | 20 |
| Expected deposits | |
| Week of 9/13 Sales | 100 |
| Cash in | 120 |
| Outflows | |
| (Non-payroll week) | |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Holiday Inventory Build-Up #1* | *25* |
| Total Outflows | 45 |
| **Cash 9/17** | **75** |

**9/18-9/24**

| Item | Amount |
|---|---|
| Cash on hand 9/18 | 75 |
| Expected deposits | |
| Week of 9/20 Sales | 105 |
| Cash in | 180 |
| Outflows | |
| Payroll 9/22 | 100 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Utilities | 11 |
| *Holiday Inventory Build-Up #2* | *25* |
| Total Outflows | 156 |
| **Cash 9/24** | **24** |

**9/25-10/1**

| Item | Amount |
|---|---|
| Cash on hand 9/25 | 24 |
| Expected deposits | |
| Week of 9/26 Sales | 105 |
| **New DIP LOAN - Tranche #2** | **120** |
| Cash in | 249 |
| Outflows | |
| (Non-payroll week) | |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Bankruptcy Legal Fees | 20 |
| *Holiday Inventory Build-Up #3* | *25* |
| eCommerce development | 10 |
| Total Outflows | 75 |
| **Cash 10/1** | **174** |

**CAPITAL TEAS MID-TERM SUMMARY CASH BUDGET**

**10/2-10/8**

| | |
|---|---|
| Cash on hand 10/2 | 174 |
| Expected deposits | |
| Week of 10/2 Sales | 105 |
| Cash in | 279 |
| Outflows | |
| Payroll 10/6 | 100 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Holiday Inventory Build-Up #4* | *25* |
| October Rent | 94 |
| Total Outflows | 239 |
| **Cash 10/8** | **40** |

**10/9-10/15**

| | |
|---|---|
| Cash on hand 10/9 | 40 |
| Expected deposits | |
| Week of 10/9 Sales | 105 |
| Cash in | 145 |
| Outflows | |
| (Non-payroll week) | |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Holiday Inventory Build-Up #5* | *25* |
| Total Outflows | 45 |
| **Cash 10/15** | **100** |

**10/16-10/22**

| | |
|---|---|
| Cash on hand 10/16 | 100 |
| Expected deposits | |
| Week of 10/16 Sales | 105 |
| Cash in | 205 |
| Outflows | |
| Payroll 10/20 | 100 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Utilities | 11 |
| Bankruptcy Legal Fees | 20 |
| Total Outflows | 151 |
| **Cash 10/23** | **54** |

**10/23-10/29**

| | |
|---|---|
| Cash on hand 10/23 | 54 |
| Expected deposits | |
| Week of 10/23 Sales | 110 |
| Cash in | 164 |
| Outflows | |
| (Non-payroll week) | |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| US Trustee Fees | 7 |
| Total Outflows | 27 |
| **Cash 10/29** | **137** |

**10/30-11/5**

| | |
|---|---|
| Cash on hand 10/30 | 137 |
| Expected deposits | |
| Week of 10/30 Sales | 110 |
| **New DIP LOAN - Tranche #3** | 10 |
| Cash in | 257 |
| Outflows | |
| Payroll 11/3 | 100 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| November Rent | 94 |
| eCommerce development | 10 |
| Total Outflows | 224 |
| **Cash 11/5** | **33** |

**11/6-11/12**

| | |
|---|---|
| Cash on hand 11/6 | 33 |
| Expected deposits | |
| Week of 11/6 Sales | 110 |
| Cash in | 143 |
| Outflows | |
| (Non-payroll week) | |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Holiday Inventory Build-Up #6 & #7* | *50* |
| Total Outflows | 70 |
| **Cash 11/12** | **73** |

**CAPITAL TEAS MID-TERM SUMMARY CASH BUDGET**

**11/13-11/19**

| | |
|---|---|
| Cash on hand 11/13 | 73 |
| Expected deposits | |
| Week of 11/13 Sales | 110 |
| Cash in | 183 |
| Outflows | |
| Payroll 11/17 | 100 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Holiday Inventory Build-Up #8* | *25* |
| Total Outflows | 145 |
| **Cash 11/19** | **38** |

**11/20-11/26**

| | |
|---|---|
| Cash on hand 11/20 | 38 |
| Expected deposits | |
| Week of 11/20 Sales | 130 |
| Cash in | 168 |
| Outflows | |
| (Non-payroll week) | 0 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Bankruptcy Legal Fees | 20 |
| Utilities | 11 |
| Total Outflows | 51 |
| **Cash 11/26** | **117** |

**11/27-12/3**

| | |
|---|---|
| Cash on hand 11/27 | 117 |
| Expected deposits | |
| Week of 11/27 Sales | 150 |
| **New DIP LOAN - Tranche #4** | 10 |
| Cash in | 277 |
| Outflows | |
| Payroll 12/1 | 105 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| December Rent | 94 |
| eCommerce development | 10 |
| Total Outflows | 229 |
| **Cash 12/3** | **48** |

**12/4-12/10**

| | |
|---|---|
| Cash on hand 12/4 | 48 |
| Expected deposits | |
| Week of 12/4 Sales | 170 |
| Cash in | 218 |
| Outflows | |
| (Non-payroll week) | 0 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Inventory Replenishment* | *25* |
| Total Outflows | 45 |
| **Cash 12/10** | **173** |

**12/11-12/17**

| | |
|---|---|
| Cash on hand 11/20 | 173 |
| Expected deposits | |
| Week of 12/11 Sales | 230 |
| Cash in | 403 |
| Outflows | |
| Payroll 12/15 | 120 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| *Inventory Replenishment* | *25* |
| Total Outflows | 165 |
| **Cash 12/17** | **238** |

**12/18-12/24**

| | |
|---|---|
| Cash on hand 11/27 | 238 |
| Expected deposits | |
| Week of 12/18 Sales | 270 |
| Cash in | 508 |
| Outflows | |
| (Non-payroll week) | 0 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| **Payment of Stub Rent for July 2017** | **64** |
| Utilities | 11 |
| Total Outflows | 95 |
| **Cash 12/24** | **413** |

**CAPITAL TEAS MID-TERM SUMMARY CASH BUDGET**

| | **12/25-12/31** |
|---|---|
| Cash on hand 12/25 | 413 |
| Expected deposits | |
| Week of 12/25 Sales | 150 |
| Cash in | 563 |
| Outflows | |
| Payroll 12/29 | 120 |
| Employee expenses | 3 |
| Necessary ongoing vendors | 17 |
| Bankruptcy Legal Fees | 20 |
| January Rent | 94 |
| *Inventory Replenishment* | *25* |
| eCommerce development | 10 |
| Total Outflows | 289 |
| **Cash 12/31** | **274** |

| | Monthly Rent | |
|---|---|---|
| 77 Main | $ 6,901 | |
| National Harbor | $ 4,978 | |
| Bethesda Row | $ 3,843 | |
| Dupont Circle | $ 5,743 | |
| Mosaic | $ 6,421 | |
| Charlottesville | $ 5,387 | |
| Annapolis Mall | $ 8,779 | |
| Fair Oaks Mall | $ 9,951 | |
| International Plaza, Tampa | $ 10,743 | |
| Towson Town Center | $ 9,475 | |
| Columbia Mall | $ 8,378 | |
| Miami International - 20% rent | $ 2,500 | 20% of prior month sales |
| HQ | $ 9,728 | |
| | | |
| Total | $ 92,827 | |

| | Monthly Rent | Stub Rent July 12 - July 31 | |
|---|---|---|---|
| 77 Main | $ 6,901 | $ 4,452.26 | |
| National Harbor | $ 4,978 | $ 3,211.61 | |
| Bethesda Row | $ 3,843 | $ 2,479.35 | |
| Dupont Circle | $ 5,743 | $ 3,705.16 | |
| Mosaic | $ 6,421 | $ 4,142.58 | |
| Charlottesville | $ 5,387 | $ 3,475.48 | |
| Annapolis Mall | $ 8,779 | $ 5,663.87 | |
| Fair Oaks Mall | $ 9,951 | $ 6,420.00 | |
| International Plaza, Tampa | $ 10,743 | $ 6,930.97 | |
| Towson Town Center | $ 9,475 | $ 6,112.90 | |
| Columbia Mall | $ 8,378 | $ 5,405.16 | |
| Miami International - 20% rent | $ 2,500 | $ 2,500.00 | estimate |
| Crabby Daddy | $ 1,600 | $ 1,032.26 | |
| HQ | $ 9,728 | $ 6,276.13 | |
| | | | |
| Total | $ 94,427 | $ 61,807.74 | |

| **Necessary Ongoing Vendors** | **weekly average** | |
|---|---|---|
| Bank Service Charges | $ | 100 |
| Business Licenses and Permits | $ | 100 |
| Computer & POS Systems | $ | 750 |
| Corporate Insurance Policies | $ | 1,500 |
| Health Care Insurance Contribution | $ | 1,500 |
| Maintenance, Cleaning & Repairs | $ | 1,500 |
| Miscellaneous Charges | $ | 500 |
| Office Supplies & Subscriptions | $ | 100 |
| On-Line Advertising | $ | 1,000 |
| Payroll Processing & HR System Fees | $ | 750 |
| Professional Service Fees - CFO | $ | 2,000 |
| Professional Service Fees - CPA | $ | 2,000 |
| Shipping & Postage | $ | 2,000 |
| Store Supplies ($100/store) | $ | 1,200 |
| Travel (above Employee Expenses) | $ | 2,000 |
| | **$** | **17,000** |